IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOHN LANKFORD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>SUBSCRIBERBASE, INC., a South Carolina corporation, and SUBSCRIBERBASE HOLDINGS, INC., a South Carolina corporation,<br><br>*Defendants.* | Case No. 12-cv-4948<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff John Lankford brings this class action complaint against Defendants SubscriberBASE, Inc. ("SubscriberBASE") and SubscriberBASE Holdings, Inc. ("SubscriberBASE Holdings", collectively "Defendants"), to stop Defendants' practice of sending unsolicited text messages to cellular telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.      Defendants SubscriberBASE's and SubscriberBASE Holdings' jointly own and operate a direct marketing firm specializing in online customer acquisition and lead generation for various companies and products. In an attempt to market a variety of online products, Defendants repeatedly sent (or directed to be sent on their behalf) unsolicited text message

1

advertisements to Plaintiff's and putative Class member's cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.  Neither Plaintiff Lankford, nor the other members of the class, ever provided their cellular telephone numbers to Defendants for any purpose, let alone consented to have Defendants send text messages to their phones.

3.  By sending the text messages at issue in this complaint, Defendants caused Plaintiff and the members of the class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages, and the monies paid to their wireless carriers for the receipt of such messages.

4.  In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited text message activities and an award of statutory damages to the members of the class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

5.  Plaintiff John Lankford is a natural person domiciled in the State of Illinois.

6.  Defendant SubscriberBASE, Inc. is a corporation incorporated and existing under the laws of the State of South Carolina with its principal place of business located at 3830 Forest Drive, Suite 207, Columbia, South Carolina 29204. SubscriberBASE does business throughout the United States, the state of Illinois and this District.

7.  Defendant SubscriberBASE Holdings, Inc. is a corporation incorporated and existing under the laws of the State of South Carolina with its principal place of business located at 3830 Forest Drive, Suite 207, Columbia, South Carolina 29204. SubscriberBASE Holdings does business throughout the United States, the state of Illinois and this District.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States and further, under 28 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

9. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District and the conduct and events giving rise to Plaintiff's claims arose here. Venue is additionally proper because Plaintiff resides here.

## COMMON FACTUAL ALLEGATIONS

10. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.1

11. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text message calls (usually no more than 160 characters) to and from cellular telephones.

12. SMS message calls are directed to a wireless device using the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell

---

1 In fact, Defendants here have been involved in at least three lawsuits and/or Attorney General investigations pertaining to alleged email spam and violations the CAN-SPAM Act (15 U.S.C. 7701, *et seq*.). *See Gordon et al v. SubscriberBASE Holdings Inc et al* (08-cv-05037-RHW) (E.D. Wash. 2008); *Ferron v. Subscriberbase Holdings, Inc. et al* (08-cv-00760-EAS -TPK) (S.D. Ohio 2008); *In the Matter of SubscriberBASE Holdings Inc* (L09-3-1220) State of Florida Office of the Attorney General, *Assurance of Voluntary Compliance* (2011).

3

phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

13. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones." In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone." Amanda Lenhart, *Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens*, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited June 17, 2012).

14. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because cell phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

15. Beginning at least as early as January 2012, Defendants sent and continue to send text messages to Plaintiff's and the Class members' cell phones without consent.

16. Defendants obtained Plaintiff and the Class members' cell phone numbers by purchasing lists of phone numbers from a third party and/or simply dialing numbers at random.

17. On June 14, 2012, Defendants transmitted the following text message to Plaintiff's cell phone:

> Congratulations, your entry in last month's drawing WON you a FREE $1,000 Target Giftcard! Enter "6655" at http://www.target.com.qlvb.biz/ to claim it NOW!

4

18. Defendants sent the above text message to Plaintiff from the number (440) 670-9983.

19. On information and belief, Defendants sent the text message to Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

20. Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to transmit text message advertisements to his cellular phone, nor did Plaintiff provide Defendants with his cellular telephone number.

21. Defendants transmitted, or had transmitted on their behalf, the same (or substantially the same) text message *en masse* to a list of cellular telephone numbers or randomly generated phone numbers. Each of the unsolicited text message advertisements indicated that the recipient had won a free gift card in a contest drawing—often to retailers like Target, Wal-Mart and Best Buy—and contained a URL to a website where users could purportedly claim it.

22. On information and belief, Defendants have no affiliation or relationship with Target, Wal-Mart, Best Buy, or any of the other retailers listed in the messages, and do not have permission to utilize or profit from these brand names.

23. Each of the URL's contained in Defendants' text messages (*e.g.*, www.target.com.qlvb.biz or www.bestbuy.com.qlvb.biz) direct a user to the websites premiumreward.net and bestdigitalrewards.com. On those sites, Defendants instruct consumers to complete a series of offers and surveys in order to receive the gift card described in the text message.

24. BestDigitalRewards.com is owned and operated by Defendants, and specifically registered to Defendant SubscriberBASE Holdings. On information and belief,

premiumreward.net is also owned and operated by Defendants; however, Defendants utilize "WhoisGuard" to mask the true owner and operator of the website in order to avoid detection and liability for their conduct.

25. Likewise, qlvb.biz is disguised and masked by "Fundacion Private Whois." On information and belief, qlvb.biz is owned and operated by Defendants, or by one of their agents.

## CLASS ALLEGATIONS

26. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class (the "Class") defined as follows:

> All individuals in the United States who received a text message on their cellular telephone sent by or on behalf of Defendants indicating that they had won a gift card.

27. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants have sent text messages to tens of thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendants' records.

28. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text messages.

29. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

30. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

  (a) whether Defendants' conduct constitutes a violation of the TCPA;

  (b) whether the equipment Defendants used to transmit the text messages in question was an automatic telephone dialing system as contemplated by the TCPA; and

  (c) whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct.

  31. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I

**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

32. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

33. Defendants and their agents sent unsolicited text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Class *en masse* without their prior express consent.

34. Defendants sent the text messages, or had them sent on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

35. Defendants utilized equipment that sent the text messages to Plaintiff and other members of the Class simultaneously and without human intervention.

36. By sending the unsolicited text messages to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited text messages on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

37. Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Lankford, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff John Lankford as the representative of the Class, and appointing his counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all unsolicited text message activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: June 21, 2012

**JOHN LANKFORD**, individually and on behalf of all others similarly situated,

By: _____
One of Plaintiff's Attorneys

Rafey S. Balabanian
Christopher L. Dore
Benjamin H. Richman
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 589-6380
rbalabanian@edelson.com
cdore@edelson.com
brichman@edelson.com